Matter of D.M.S. v C.P. (2005 NY Slip Op 50090(U))

[*1]

Matter of D.M.S. v C.P.

2005 NY Slip Op 50090(U)

Decided on January 31, 2005

Family Court, Nassau County

Lawrence, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 31, 2005

Family Court, Nassau County
In the Matter of a Proceeding under Article 6 of the Family Court Act D.M.S., Petitioner,
against
C.P., Respondent.

Richard S. Lawrence, J.
C.P., the Respondent in Actions 1 through 5 and Petitioner in Action 6, moves this Court pursuant to CPLR §3404 to restore Actions 1 through 5 to the trial calendar; to vacate the Respondent's attorney's default and to strike the partial testimony of Petitioner's witness, D.K. [*2]Respondent moves by order to show cause which contained a stay of all proceedings in these matters "pending hearing and determination of the motion."
Although no opposing papers have been submitted, on the return date of the order to show cause, December 23, 2004, counsel for each party, together with the Respondent, appeared and orally argued Respondent's instant order to show cause.
It is Petitioner's argument that no opposition is necessary as the Respondent has failed, in his moving papers, to sufficiently
allege and show an excusable default and a meritorious defense. Respondent orally argued that he has not yet, during the trial, put in any defense whatsoever as of the close of testimony. Petitioner countered at oral argument that the Respondent had already "put in his defense."
The order to show cause was then marked submitted, pending written decision by this Court.
The torturous history of these matters is as follows:
The Petitioner had filed a series of petitions alleging the violation of a certain order of protection which was entered on January 22, 2003. The filing dates of each of those violation petitions were May 22, 2003, June 11, 2003, July 7, 2003,
October 20, 2003 and July 12, 2004. For purposes of convenience, this Court, in the captions at the beginning of this decision and order, has denominated them actions 1 - 5, respectively. After the hearing had begun with respect to actions 1 - 3, an action 4 was filed on October 20, 2003, and on consent it was included as part of the hearing. Action 5, filed on July 12, 2004, was not part of any hearing nor was action 6, which involved C.P. as the Petitioner against his father-in-law, D.S., as Respondent. Accordingly, the instant application is with respect to actions 1 - 4 only.
The original final order of protection of January 22, 2003, was in effect for a period of one year. However, a new temporary order of protection was signed by this Court on November 17, 2003 and thereafter extended pending the conclusion of these matters. This "temporary" order has therefore been in effect for well over a year.
The hearing originally commenced as to actions 1 - 3 only on August 29, 2003. The Petitioner testified first, and then the Respondent testified after having been called by the Petitioner as a witness. The hearing was to have continued on September 23,
2003, but the Respondent's attorney advised that he had a death in his family and therefore the hearing was adjourned on consent until October 22, 2003.
On October 22, 2003, the hearing continued with testimony from the Petitioner as a [*3]witness for the Respondent, and thereafter the Respondent himself as his own witness. At the conclusion of that day's session, an additional hearing date was scheduled for November 12, 2003. However, the Court received a letter from the
Respondent's attorney requesting an adjournment of that date on consent, pending a "global settlement" of the pending matrimonial action between the parties, which would include the matters pending before this Court. In accordance with the parties' request, actions 1 - 4 and action 6 were adjourned for conference only to January 27, 2004.
On January 27, 2004, this Court received an affirmation of engagement from the Respondent's attorney stating he "will be engaged" in a criminal matter in the District Court "where the Defendant is coming in from California." At the same time, the Petitioner submitted a motion regarding certain subpoenaed docu-ments from Cablevision. The Respondent requested additional time
to file a cross-motion and the Court set a motion schedule with a return date of February 27, 2004 and continued hearing dates of April 13, 2004 and April 14, 2004, as it was evident that there was no "global settlement," especially in view of the motion.
It should be noted that these additional April 2004 trial dates were set for more than two months subsequent.
Regarding the hearing of April 13, 2004, the subject was actions 1 - 4 (again, action 4 having been included with the consent of both parties) and there was continued direct testimony from the Respondent. Immediately prior to that trial date, the Respondent's attorney had requested an adjournment due to the fact that he stated he "will be actively engaged" in Nassau County District Court on a "trial conference." Respondent's attorney also submitted a letter requesting an adjournment "at the suggestion of the Supreme Court Justice handling the matrimonial action because of an anticipated settlement" in the Supreme Court. The Peti-tioner's attorney countered with a letter objecting to any adjournment and stating there was no settlement.
Although the hearing was to have continued on April 14, 2004, the hearing, in fact, was not continued on that date. Although the Court cannot tell exactly why the hearing was not continued, it
appears that it may have been due to the Court's decision with respect to subpoenaed documents, ordering that the documents be produced by a specific day subsequent to April 14, 2004. However, at that time (April 14, 2004), additional hearing dates were set for July 6, July 7 and July 8, 2004.
Shortly before the continued hearing date of July 6, 2004, Respondent's attorney [*4]forwarded an affirmation for adjournment for that date, stating that he "will be engaged in a hearing." The Petitioner's attorney in his letter did not consent to any further adjournment, but then sent a further letter indicating that he would not appear on July 6th to oppose any adjournment, in order to save his client counsel fees for his appearance. Respondent's counsel was contacted on behalf of this Court in order to ascertain how long his conflict would be and was told that it would only be for one day. This was also confirmed in Petitioner's letter that the hearing would continue on July 7, 2004 and July 8, 2004.
On July 7, 2004 both parties and both counsel were present. However, unfortunately due to a very heavy afternoon calendar that day, this Court was unable to continue the hearing.
On July 8, 2004, this Court had an emergency hearing on a child neglect matter where the witnesses were flown here at tax-
payers' expense from the South. However, although there was no prior notice to this Court, Petitioner had present as her witness D.K., whom she had flown here from Florida at her expense. Accordingly, and despite the lateness of the hour, this Court heard testimony from Ms. K. for over one hour. The Court then set additional hearing dates with the consent of both parties and both counsel for November 15, November 16 and November 17, 2004. Although the hearing was to continue with the cross-examination of Ms. K., Petitioner's counsel wrote this Court on November 3, indicating that the witness' father was seriously ill and that she could not appear for the continued hearing. Petitioner's counsel offered to communicate "via telephone or by written correspondence" and suggested to Respondent's counsel that he "provide written questions for your continued cross-examination of Ms. K., Ms. K. can respond to your questions, swear as to their content before a notary public and forward them directly to Judge Lawrence for the upcoming appearance date of November 15, 2004."
The only response to that letter was Respondent's attorney's affirmation of November 12, indicating that he could not appear on November 15, 2004 in this Court since he "will be engaged" in a matter in the Nassau County Supreme Court.
On November 15, 2004, the Petitioner and her counsel were present and there was no appearance by the Respondent nor his
counsel. Petitioner then rested, opposed any continuance and requested a decision from this Court with respect to the matter which had been heard by this Court over the last year. The Court declared Respondent in default and marked this matter as submitted for written decision.
It should be noted that at the conclusion of the continued hearing of April 13, 2004, the Court inquired of counsel as to how many additional witnesses they would have. Petitioner indicated that she would have one witness [D.K.] and Respondent indicated he would have 3 - 4 additional witnesses.
[*5]
The Uniform Rules for the Engagement of Counsel, contained within the Rules of the Chief Administrator, are set forth at 22NYCRR §125.l. Subparagraph (f) of those rules states:
Where a trial already has commenced, and an
attorney for one of the parties has an engage-
ment elsewhere, there shall be no adjournment
of the ongoing trial except in the sole dis-
cretion of the judge presiding thereat; pro-
vided that the judge presiding shall grant
a reasonable adjournment where the engagement
is in an appellate court.
Further, subparagraph (g) of the same rules states:
This subdivision shall apply where a date for
trial of an action or proceeding is fixed at
least two months in advance thereof upon the
consent of all attorneys or by the court. In
such event, the attorneys previously designated
as trial counsel must appear for trial on that
 date. If any of such attorneys is actually
engaged on trial elsewhere, he or she must
produce substitute trial counsel. If neither
trial counsel nor substitute counsel is ready
to try the case on the scheduled date, the
court may impose any sanctions permitted
by law.
In this matter as indicated above, on one prior date the con- tinued hearing was in fact set more than two months prior, and the last date of November 15, 2004 was also set more than two months in advance.
This Court, having previously been in private practice for almost 30 years, is well aware [*6]of the conflicts counsel with an active trial practice are confronted with, and the problems which arise. In other similar matters, this Court has willingly con-tacted other Judges with whom there is a potential conflict, in order to attempt to work out a solution which will satisfy both Judges. However, in this matter, no request was ever made to this
Court to contact any other Judge, nor were the details of the "conflict" given to this Court. The hearing in these matters had commenced on August 29, 2003, well over one year prior to the most
recent date; there was no end in sight to this litigation; and litigation must come to an end sooner or later.
With respect to Respondent's instant order to show cause, this Court finds that there is no reasonable excuse for the default: there was no reason propounded for Respondent's failure to abide by the Rules of the Chief Administrator, nor any request to this Court (even though such request is not contained in the Rules) to speak to any other Judge.
Regarding the required affidavits of merit in order to vacate a default, this Court finds none in the moving papers. The only "meritorious defense" is contained in Paragraph 10 of the sup-porting affirmation and paragraphs 4 and 5 of the supporting affi-davit of the Respondent which state, in effect, the Court has not yet heard all of the testimony, but that when all of the testimony is heard, the Court will dismiss the various petitions. This does not rise to an affidavit of meritorious defense. Helen T. V Roosevelt B., 256 AD2d 583 (2d Dept 1998); Fidelity Deposit and Co.
Of Maryland v Arthur Andersen & Co., 60 NY2d 693 (1983). It is also in the sound discretion of the Court to determine what constitutes a reasonable excuse as well as a meritorious defense. Beizer v Funk, 5 AD3d 619 (2d Dept 2004).
The history of this matter has been replete with one request after another on behalf of Respondent, either due to counsel's
engagement in another court or Respondent's belief that there will be a "global settlement." Furthermore, the Rules of the Chief Administrator have not been complied with on the two occasions mentioned above. For all of these reasons, Respondent's order to show cause is denied in its entirety and the stay contained in the order to show cause dated December 17, 2004 is hereby vacated.
This Court will now address the merits of the various petitions and the testimony and evidence submitted to this Court.
As set forth at the beginning of this decision, the subject matter of this hearing has [*7]consisted of four separate petitions alleging violations of a final order of protection. In essence, the Petitioner has testified that each of these violations occurred; and Respondent has testified that none of them occurred. In a matter such as this, the credibility of the witnesses is all
important. Here, the sole witnesses this Court has heard are the two parties themselves, together with D.K.
Ms. K. was called by the Petitioner in order to testify to a certain email she received. The email message is in evidence. That email dated October 21, 2003 and which is the subject of action 4 herein, is a message purportedly sent by the Petitioner to
D.K. It contains personal attacks upon this Court, as well as vicious and racist attacks upon the Supreme Court justice handling the parties' matrimonial action.
Regarding that email, Petitioner has testified in essence that it was sent by the Respondent, who allegedly is a computer expert, using her email address, in an attempt to prejudice the Court against her. Respondent states, in essence, that he had nothing to do with the email and that it was in fact sent by the Petitioner to D.K. D.K.'s testimony, in essence, is that although she cannot be sure which party sent it to her, she does not believe that the Petitioner sent it to her.
The subject of the four violation petitions can very well result in the Respondent being incarcerated by this Court consecu-
tively, for up to 6 months per violation. Walker v Walker, 86 NY2d
624 (1995). Because of this, the standard of proof necessary for this Court to find a violation is a fairly high one of "clear and convincing evidence." FCA §846-a; Williams v Williams, 230 AD2d 916 (2d Dept 1996).
In this matter, this Court has made it clear to the parties, and stated many times on the record, that in view of the egregious and massive perjury of one of the parties, that upon a finding against either party as to credibility, that the transcript of the hearing regarding the testimony of each party will be ordered by this Court and forwarded to the District Attorney of Nassau County. However, during the testimony of each of the parties, this Court has intently observed them, their mannerisms, the way they responded, their facial expressions, their body language, and the other things this Court uses in order to determine credibility. This Court finds that each of the parties testified credibly and this Court cannot determine which of the parties has submitted continued perjurous testimony, and especially not to the standard of "clear and convincing" against the Respondent, in order to make any finding against him. Accordingly, actions 1 - 4 inclusive are dismissed with prejudice and the temporary order of protection, as [*8]extended, is hereby vacated.
In the Respondent's supporting affidavit to his order to show cause to set aside the default, he states that it is his "intention to withdraw" the petition against his father-in-law, D.S.(this is action 6 as set forth in the caption at the beginning of this decision). Normally, this Court would inquire as to whether the withdrawal would be with or without prejudice, and both parties would be given an opportunity to he heard regarding that issue. As set forth earlier, this Court did not address action 6, nor did it hear any testimony regarding that matter.
Likewise, action 5 was filed by the Petitioner toward the end of the hearing in this matter and accordingly, was not part of the hearing.
Under a new system in effect in the Nassau County Family Court as of January 3, 2005, each Judge in this courthouse now has a pure dedicated part, and unless there is a continuing hearing before a Judge, virtually all matters are being re-assigned to a new judge who now hears only a particular type of case.
Accordingly, and with respect to actions 5 and 6 only, they are respectfully referred to Judge Tammy Robbins for a conference only at 9:00 a.m. on February 9, 2005.
Lastly, this Court notes that subsequent to the captioned matters which have been pending before this Court, but prior to the
date of this Decision and Order, Petitioner has filed, on December 17, 20024, yet an additional petition alleging a violation of the order of protection. The docket number assigned is O-00464-03/04F. This matter is likewise respectfully referred to Judge Tammy Robbins for a conference only at 9:00 a.m. on February 9, 2005.

This constitutes the Decision and Order of this Court.
Dated: Westbury, New York
 January 31, 2005
 E N T E R
 
 HON. RICHARD S. LAWRENCE
[*9] J.F.C.
Pursuant to Section 1113 if the Family Court Act, an appeal from this order must be taken within 30 days of receipt of the order by appellant in Court, 35 days from the date of mailing by the Clerk of the Court, or 30 days after service by a party or the law guardian upon the appellant, whichever is earliest.
Check applicable box:
 Order mailed on [specify date(s) and to whom mailed]: / 
 Order received in Court on [specify date(s) and to whom given]: /